ELECTIONS – BALLOTS – REFERENDA – ADEQUACY OF BALLOT
TITLE FOR QUESTION ON REVISED CITY CHARTER


December 19, 1994


*The Honorable George W. Della, Jr.*
*Maryland Senate*

You have requested our opinion whether the description of Question J on the Baltimore City general election ballot satisfied the legal requirements for ballot titles. At the recent election, the ballot title for Question J read as follows: "CHARTER AMENDMENT – Providing for a revised Charter of Baltimore City".

Although this is a very brief description of what was a comprehensive revision of the charter, it is our opinion that the ballot title accurately advised the voters of the nature of the question on which they were voting. The applicable law requires no more than that.


## I

### Background

Pursuant to the Charter Home Rule Article of the Maryland Constitution, Article XI-A, §1, the voters of Baltimore City lawfully adopted a charter at the general election of 1918. *See Cheeks v. Cedlair Corp.*, 287 Md. 595, 599, 415 A.2d 255 (1980); *Jones v. Broening*, 135 Md. 237, 239-240, 108 A. 785 (1919); *Williams v. Broening*, 135 Md. 226, 233-234, 108 A. 781 (1919). Although substantially amended, this charter remains in effect.

Under Article XI-A, §5 of the Constitution, amendments may be proposed by resolution of the Mayor and Council or by petition of the voters. Exercising its authority earlier this year, the Council passed Council Bill 791.

The title of the 140-page bill, which was largely based on the work of the Baltimore City Charter Revision Commission, described the contents as "proposing a revision of the Charter of Baltimore City and submitting this revision to the qualified voters of the City

of Baltimore for their adoption or rejection."   The bill made a number of substantive changes to the existing charter.[1]  Among other matters, these changes related to the qualifications and election of council members; the powers of the Mayor; the appointment and tenure of boards and commissions; the power of the City Auditor; the budget process; the Civil Service Commission and the civil service status of certain personnel; procurement; legal representation of the city; the appointment, tenure, and power of the school commissioners and school superintendent; the appointment of the Planning Commission and director; and the qualifications and powers of the Board of Municipal and Zoning Appeals.  On July 14, 1994, the bill was approved by Mayor Schmoke and was identified as Resolution No. 25.

Section 4 of Resolution 25 directed that the revision be submitted to the voters at the general election of 1994.[2]  As required by the Election Code, the City certified the charter revision question and the ballot title to the Board of Supervisors of Elections for Baltimore City.  Article 33, §§16-6 and 23-1(a) of the Maryland Code.  As drafted by the City Solicitor's Office, the ballot title read as follows:

QUESTION J
CHARTER AMENDMENT
Providing for a revised Charter of Baltimore City.

---

[1] The bill set out the entire charter as it would read when revised. Although the bill include Article II of the charter, this article contains the City's express powers which only the General Assembly may amend. Article XI-A, §2.  *See Cheeks*, 287 Md. at 607 and 609.  We are advised by the City Solicitor's Office that no change has been made in Article II.

[2] Section 4 also directed that ballots contain the following words:

CHARTER REVISION

Providing for a revised Charter of Baltimore City

FOR CHARTER REVISION

AGAINST CHARTER REVISION

The Board subsequently posted the ballot title for public inspection for five days, as required by Article 33, §16-4(f). Although that provision authorizes any registered voter to seek judicial relief concerning the arrangement or contents of the ballot, no lawsuit was filed challenging the ballot title for Question J.

On November 3, 1994, the ballot title was published by the Board as part of the required election notice in the *Sun* and *Evening Sun*. This same notice was published in the *Afro-American* on November 5, 1994. *See* Article 33, §§2-10(c), 8-5(a), and 23-1(a). The City published the text of the revised charter in the *Sun* and *Evening Sun* on October 10, 1994. Notice was also given in the *Sun* and *Evening Sun* on October 17, 24, and 31 and November 7, and in the *Afro-American* on October 1, 8, 15, 22, and 29. At the general election on November 8, 1994, the charter revision gained approval by a wide margin, with 50,216 votes cast for the revision and 26,462 votes cast against the revision.

## II

### Sufficiency of Ballot Title

In your inquiry, you suggest that the ballot title for Question J did not satisfy the requirements of Article 33, §16-6. In relevant part, §16-6(a) provides as follows:

> The ballot shall contain a condensed statement in understandable language of every constitutional amendment or other question to be submitted to the vote of the people at any election. It is sufficient in any case to print the legislative title, a brief summary of the contents or purpose of the proposed amendment or referendum unless the act proposing the constitutional amendment or other question specifically provides the title to be used. . . . In the event the title of the bill, ordinance or resolution, as the case may be, is one hundred words or less, the title shall be sufficient. In the event the title exceeds one hundred words, a summary of the title containing not in excess of one hundred words shall be prepared and certified to the boards.

It has been understood that the second sentence is to be read in the disjunctive, so that it is sufficient "in any case to print the legislative title, [or] a brief summary of the contents or purpose. . . ." *See Anne Arundel Co. v. McDonough*, 277 Md. 271, 295, 354 A.2d 788 (1976). *See also* 60 *Opinions of the Attorney General* 78, 81 (1975). Although it is not entirely clear, §16-6(a) evidently requires that all ballot titles, including those specifically prescribed by the initiating body, be a "condensed statement in understandable language of every ... question to be submitted to the vote of the people." *See Surratt v. Prince George's County*, 320 Md. 439, 447, 578 A.2d 745 (1990).

Because Article 33, §16-6 governs the ballot title for constitutional amendments as well as other questions, the meaning of the provision has been considered in various contexts. *See Kelly v. Vote Know Coalition*, 331 Md. 164, 167 and 172, 626 A.2d 959 (1993) (referendum question under Article XVI); *Surratt*, 320 Md. at 447-449 (county charter amendment); *Anne Arundel Co. v. McDonough*, 277 Md. at 275 and 295-296 (1976) (referendum question under county charter); *Morris v. Governor*, 263 Md. 20, 26-27, 281 A.2d 216 (1971) (constitutional amendment under Article XIV); *Lexington Park Volunteer Fire Department, Inc. v. Robidoux*, 218 Md. 195, 197 and 199-200, 146 A.2d 184 (1958) (statutorily mandated referendum on local law). Nevertheless, whatever the context, the Court of Appeals has applied the same basic standard.

If a legislative title is used for the ballot title, the standard is that of Article III, §29 of the Constitution, which prescribes the title requirement for enacted bills. Thus, the ballot title must concern only one subject, must fairly advise the voters of the purpose of the act, and not be misleading. *Surratt*, 320 Md. at 448-449; *McDonough*, 277 Md. at 295-296.[3] If the ballot title is not the legislative title but a brief summary, the standard is essentially the same: whether the question is posed accurately and in a non-misleading manner and advises the voters of the true nature of the proposition to be voted on. *Kelly*, 331 Md. at 172; *McDonough*, 277 Md. at 296. In a case challenging the adequacy of a ballot title, judicial review is limited to determining whether the language

---

[3] The requirement that a title relate to only one subject applies only if the referred measure, such as a bill that becomes a statute, must concern only one subject. There is no express one-subject rule for charter amendments. *See* Article XI-A, §5.

"'conveys with reasonable clarity the actual scope and effect of the measure.'" *Kelly*, 331 Md. at 174 (quoting *Surratt*, 320 Md. at 447). So long as the ballot title meets the recognized standard, it is irrelevant that a more informative title could have been drafted. *Kelly*, 331 Md. at 174.[4]

Applying the recognized standard to the ballot title for Question J, we conclude that the title satisfies the requirements of §16-6. The ballot title was a condensed statement in understandable language of the question, and it accurately advised the voters of the true nature of the proposition without being misleading.

The critical term is "revised" as used in connection with the word "charter." In ordinary English, "revise" means "to alter something already written or printed, in order to make corrections, improve, or update." *Random House Dictionary of the English Language* 1648 (2d ed. 1987). Moreover, in legal parlance, "revise," as it applies to a charter, refers to a re-examination of the entire instrument and to the making of fundamental changes. *Kelly v. Laing*, 242 N.W. 891, 892 (Mich. 1932); *Albert v. City of Laconia*, 592 A.2d 1147, 1149 (N.H. 1991). *See also Black's Law Dictionary* 1321 (6th ed. 1990).

In view of the comprehensive and substantive changes made by the Resolution No. 25, it can reasonably be characterized as a "revised charter." By advising the voter that the question to be voted on was a "revised charter," the ballot title accurately advised the voter of the essential nature of the question in understandable language. In view of the extensive nature of the changes and the space limitations, it was not necessary to describe every particular change. *See Madison Nat'l Bank v. Newrath*, 261 Md. 321, 336-37, 275 A.2d 495 (1971) (title of bill enacting Uniform Commercial

---

[4] Election cases commonly reflect a distinction based on whether the case arose before or after the election. Prior to an election, courts will require election officials to strictly administer the election law. Following an election, courts generally will not invalidate an election for failure of election officials to carry out the law unless the failure interfered with full and fair expression of the will of the voters. *Dutton v Tawes*, 225 Md. 484, 491, 171 A.2d 688 (1961). However, in the *Surratt* case, the Court of Appeals declined to apply this post-election rule in passing on the adequacy of a ballot title, characterized by the Court as "misleading and inaccurate," that was critical to the voter's choice in the voting booth. 320 Md. at 450-451.

Code held sufficient).  Moreover, describing some, but not all, of the changes could have been misleading.  *See Kelly*, 331 Md. at 177.

We recognize, of course, that as a practical matter the ballot title would itself not reveal to a voter anything about the detailed effect of the revised charter.  A voter who had not read materials about the question before election day would not be fully informed by the ballot title.  The reality of limited space, however, means that the ballot title of any complex measure will likely not be a self-sufficient tool of voter education.  The law recognizes this reality and was not violated in this instance.

### III
### Conclusion

In summary, it is our opinion that the ballot title for Question J, a "revised charter," satisfied the requirements of applicable law.

> J. Joseph Curran, Jr.
> *Attorney General*
>
> Richard E. Israel
> *Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
*Opinions & Advice*

***Editor's Note:***

The statutory provision construed in this opinion, former Article 33, §16-6(a), is currently codified as Article 33, §7-104(a) and (b).